UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONiCALLY  FILED
DOC #:_____
DATE FILED OCT 2 5 2012
```

------------------------------------------------------------------X

TAHIR MAHMOOD,                        :
                                      :          12 Civ. 899 (KBF)
            Plaintiff,                :
                                      :          OPINION AND ORDER
            -v-                       :
                                      :
RESEARCH IN MOTION LTD.,              :
                                      :
            Defendant.                :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On August 1, 2011, plaintiff Tahir Mahmood ("plaintiff" or "Mahmood")

commenced a lawsuit against defendant Research In Motion Ltd. ("defendant" or

"RIM") for federal correction-of-inventorship claims as well as for New York state

claims of conversion, unfair competition, and unjust enrichment. See Mahmood v.

Research In Motion Ltd. (Mahmood I), No. 11 Civ. 5345 (KBF), 2012 WL 1801963

(S.D.N.Y. 2012).  The suit alleged that RIM co-opted Mahmood's "PageMail"

invention in violation of state law and applied for what would become U.S. Patent

No. 6,219,694 B1 (filed May 29, 1998) ("'694 Patent") without listing Mahmood as

an inventor.  See Complaint at 1-3, 7-12, 14, 24-26, Mahmood I, 2012 WL 1801963.

In effect, Mahmood claimed that RIM developed its iconic BlackBerry e-mail

application by unlawfully using the ideas he shared with RIM in a series of

conversions in 1995 and 1996.  See id.

On RIM's first motion for summary judgment, this Court found Mahmood's

state law claims to be time-barred under the relevant statutes of limitations.

1

Mahmood I, 2012 WL 242836, at *1.  After a bench trial, the Court dismissed the sole remaining claim for correction-of-inventorship as barred by laches.  Mahmood I, 2012 WL 1801963, at *1.

On February 3, 2012 — after the Court's ruling on the first motion for summary judgment but before the bench trial — Mahmood brought the present action ("Mahmood II") against RIM.  (See Compl. 1, 47, ECF No. 1.)  In this action, Mahmood claims that, through the same series of 1995-1996 communications, RIM co-opted essentially the same ideas as those at issue in Mahmood I.  (See Compl. 1-2, 10-18.)  Like his first action, Mahmood raises a federal correction-of-inventorship claim as well as a variety of state law claims.  (Id. at 36-45 (including claims of correction of inventorship, fraud, declaration of ownership, breach of fiduciary duty, conversion, unfair competition, and unjust enrichment).)  Also like his first action, Mahmood requests relief potentially encompassing the entire '694 Patent family.  (Id. at 45-46.)  Unlike in Mahmood I, however, plaintiff argues that this complaint focuses on RIM's "family of patents and patent applications related to the '694 patent" (Id. at 5), rather than on the '694 Patent itself.

RIM now moves to dismiss this complaint on the grounds that: (1) Mahmood's claims are barred by res judicata, (2) collateral estoppel requires the Court to find his claims barred by laches and the relevant statutes of limitations, (3) his inventorship claims are barred by laches, (4) his state law claims are barred by the applicable statutes of limitations, and (5) his state law claims fail to state a claim for which relief may be granted.  For the following reasons, the Court agrees that

2

res judicata bars plaintiff from bringing this second action, and RIM's motion to dismiss is GRANTED.

## I. DISCUSSION

### A. Standard for Motion to Dismiss

On a motion to dismiss, the Court accepts "as true all well-pleaded factual allegations in the Complaint" and draws "all reasonable inferences in favor of the plaintiff." SEC v. Apuzzo, 689 F.3d 204, 207 (2d Cir. 2012) (citing Litwin v. Blackstone Group, L.P., 634 F.3d 706, 715 (2d Cir. 2011)). But the facts pleaded must have sufficient content to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### B. Legal Standard for Res Judicata

The doctrine of res judicata,[1] or claim preclusion, holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Cromwell v. County of Sac, 94 U.S. 351, 352 (1876)). Courts give res judicata effect to final judgments to "relieve parties of the cost and vexation of multiple lawsuits, [to] conserve judicial resources, and, by preventing

---

[1] "Res judicata" is used to refer both to the doctrine of claim preclusion alone and to the doctrines of claim preclusion and issue preclusion (or collateral estoppel) collectively. See Allen v. McCurry, 440 U.S. 90, 94 n.5 (1980). This Court will use "res judicata" to refer only to the doctrine of claim preclusion.

3

inconsistent decisions, [to] encourage reliance on adjudication." Id. (citing Montana

v. United States, 440 U.S. 147, 153-54 (1979)).

To make out an affirmative defense of res judicata, "a party must show that

(1) the previous action involved [a final] adjudication on the merits; (2) the previous

action involved the plaintiffs or those in privity with them; [and] (3) the claims

asserted in the subsequent action were, or could have been, raised in the prior

action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000)

(citing Allen, 449 U.S. at 94). Whether claims asserted in a prior action are similar

enough to preclude claims asserted in a subsequent action under the third prong of

this test "depends in part on whether the same transaction or connected series of

transactions is at issue, whether the same evidence is needed to support both

claims, and whether the facts essential to the second were present in the first." Id.

at 289 (citing NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)).

"'Transaction' must be given a flexible, common-sense construction that recognizes

the reality of the situation." Id. (quoting Interoceanica Corp. v. Sound Pilots, Inc.,

107 F.3d 86, 91 (2d Cir. 1997)).

In other words, courts must make a pragmatic distinction between, on the

one hand, parties who bring multiple suits because different circumstances have

caused different legal injuries than those previously litigated, and, on the other

hand, parties who seek multiple bites at the apple by splitting claims that ought to

be litigated together into separate lawsuits. Thus, for example, when a party has

sued for breach of a long-term contract, "res judicata will preclude a subsequent suit

4

for any claim of breach that had occurred prior to the first . . . suit, but will not preclude a subsequent suit for a breach that had not occurred when the first suit was brought." <u>SEC v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1464 (2d Cir. 1996) (citing <u>Restatement (Second) of Judgments</u> § 24 cmt. d).

Given the confusion on the topic both in the briefs and at oral argument, it is also worth explaining how res judicata differs from collateral estoppel. Unlike res judicata, which limits a party's ability to bring multiple suits over one transaction or series of transactions, collateral estoppel limits a party's ability to argue that the same issue decided in one action should be decided differently in another. Collateral estoppel can bar a party from making a particular argument in any action against any adversary.

Consequently, collateral estoppel has limitations that do not apply to res judicata. To be barred by collateral estoppel, an issue must be identical with one actually litigated, actually decided, and necessary to the holding in a previous action. <u>See Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 288-89 (2d Cir. 2002). The party against whom collateral estoppel is asserted must have also had a full and fair opportunity to litigate the issue. <u>Id.</u> None of these requirements limit the application of res judicata. <u>See, e.g.</u>, <u>Monahan</u>, 214 F.3d at 285. Thus, to argue that an issue decided in a previous action — for example, that laches is a defense to a particular claim — should come out differently in another context is central to the question of collateral estoppel. If a new context changes the legal analysis, then the issue may not be sufficiently "identical" to bind a party to a decision in the prior

action.  By contrast, that same question is irrelevant to the issue of res judicata.

Res judicata bars new claims out of the same transactions regardless of whether

they are winners or losers.  A party's second bite at the apple may well be

successful.  It will be barred under res judicata because the party already had one

bite at the apple; not because the second bite would necessarily taste the same (or

be decided the same way) as the first.

C. <u>Res Judicata Effect of Mahmood I</u>

Here, res judicata precludes Mahmood from bringing this second, subsequent

action, regardless of whether the claims he asserts in this action would be barred by

laches or by the statute of limitations.

### 1.  Final Adjudication on the Merits Involving the Same Parties

There is little question that defendant satisfies the first two elements of the

test for res judicata.  First, <u>Mahmood I</u> indisputably involved the same parties as

this action.  Second, all of the claims in <u>Mahmood I</u> were resolved by adjudication

"on the merits."[2]  In that case, the Court dismissed Mahmood's state law claims as

barred under the applicable statutes of limitations.  <u>Mahmood I</u>, 2012 WL 242836,

at *1 (order granting motion for summary judgment in part).  The Court later

dismissed Mahmood's remaining inventorship claim as barred by the doctrine of

laches.  <u>Mahmood I</u>, 2012 WL 1801963, at *1.  Both of these grounds for dismissal

are "on the merits" for purposes of res judicata.  See <u>PRC Harris, Inc. v. Boeing Co.</u>,

---

[2] No party disputes the finality of the judgment rendered in <u>Mahmood I</u>.

700 F.2d 894, 896 (2d Cir. 1983) (statute of limitations); <u>Societe Generale Energie</u>

<u>Corp. v. N.Y. Marine & Gen. Ins. Co.</u>, 368 F. Supp. 2d 296, 303 (S.D.N.Y. 2005)

(laches); <u>see also</u> Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise,

a dismissal under this subdivision (b) and any dismissal not under this rule —

except one for lack of jurisdiction, improper venue, or failure to join a party under

Rule 19 — operates as an adjudication on the merits.").[3]

## 2.  Same Transaction or Series of Transactions

RIM also satisfies the third element of res judicata because the claims in

<u>Mahmood II</u> are similar enough to those of <u>Mahmood I</u> to be precluded.  Mahmood

disputes this in two ways.  First, he argues that the two actions concern different

patents.  Second, and as a result of the first proposition, he maintains that the

complaints involve different "series of transactions" and thus are not barred by res

judicata.  The Court disagrees with both propositions.

### a.  Both Complaints Concern the Entire '694 Patent Family

First, notwithstanding his representations in connection with this motion,

both complaints actually raise claims and demand relief for alleged improprieties

involving the entire '694 Patent family.  While Mahmood's first complaint does focus

on the '694 Patent, it is not limited to that patent.  As part of its Background

section, the first complaint notes the presence of other patents (related to the '694

---

[3] Mahmood does not cite to a single case, statute, rule or other legal authority that would support the argument that <u>Mahmood I</u> was not decided on the merits.  (Pl.'s Mem. Law Opp'n Mot. Dismiss 7-8, ECF No. 18.)  Nor, when asked at oral argument on this motion, could Mahmood provide any support for the proposition that decisions on laches or statutes of limitations may not be considered "on the merits" for purposes of res judicata.  (Hr'g Tr. 53:2-8.)

Patent) that may be actionable.  Complaint at ¶¶ 82-83, <u>Mahmood I</u>, 2012 WL 1801963.  In its Claims section, the first complaint states claims that would capture patents beyond merely the '694 patent.  <u>See id.</u> ¶¶ 148-50 (alleging unjust enrichment from, among other things the "commercial benefits and advantages attendant <u>or related to</u> the ownership or licensing of the '694 patent" (emphasis added)).  And in its prayer for relief, the first complaint explicitly requests that the Court correct "the '694 patent and such other RIM patents that the Court may deem proper," <u>id.</u> at 26, and "assign any patents and pending patent applications relating to or claiming priority to the '694 patent" to Mahmood, <u>id.</u> at 27.  <u>Mahmood II</u> thus involves largely the same claims concerning the same patents at issue in <u>Mahmood I</u>.  This alone entitles RIM to dismissal on the basis of res judicata.

### b.  Both Actions Involve the Same Series of Transactions

Second, even assuming that the first complaint did not concern the entire '694 Patent family, the two complaints would still concern the "same series of transactions."  As <u>Monahan</u> and <u>Allen</u> make clear, this transactional test focuses on the facts at the heart of the two actions and requires the Court to make a common-sense determination of whether the two actions are so related that they should have been litigated together.  <u>See Allen</u>, 449 U.S. at 94; <u>Monahan</u>, 214 F.3d at 289.  These actions are.  They both involve the same series of communications; they both involve the same type of alleged misappropriation from the same set of information; and they both turn on largely the same evidence.

In <u>Mahmood I</u>, there were three sets of alleged facts that, together, plaintiff claims are actionable.  First, there were a series of alleged 1995-1996 communications in which Mahmood confidentially shared his "PageMail solution" with Donald McMurtry of RIM.  <u>See</u> Complaint at ¶¶ 37-57, <u>Mahmood I</u>, 2012 WL 1801963.  Second, there was RIM's alleged conduct in co-opting Mahmood's invention — both by developing its BlackBerry e-mail system with the information Mahmood provided and by patenting that system without informing or including Mahmood.  <u>Id.</u> ¶¶ 66-83.  Third, there was an alleged exchange of letters in 2004 in which Mahmood informed RIM of his claims to PageMail, but RIM declined to act on those claims.  <u>Id.</u> ¶¶ 104-18.

This action turns on three similar sets of allegations: (1) the same communications between Mahmood and McMurtry (Compl. ¶¶ 43-74; Mot. Dismiss Hr'g Tr. 43:7-45:24), (2) the co-opting of Mahmood's invention by RIM's development of its BlackBerry e-mail system and by patenting that system without informing or including Mahmood (Compl. ¶¶ 91-186), and (3) the same communications in 2004 in which Mahmood informed RIM of his claims to PageMail and in which RIM declined to act on those claims (<u>id.</u> ¶ 201).

In both actions, the information Mahmood shared with RIM in 1995-1996, its relation to the BlackBerry e-mail system, and the parties' understandings of how that information could be used would form the central issues of a trial on the merits.  While trial in the first action might focus on how the information relates to

9

the '694 Patent,[4] and trial in the second action might focus on how it relates to the '694 Patent family, the trials would indisputably involve the same evidence.  At oral argument, plaintiff acknowledged the extensive overlap between the two actions and conceded that "[i]t would have been efficient" to try the two actions together. (Hr'g Tr. 58:21; see also id. 59:3 (noting that "some of the facts would have been common" between the two actions).)  Indeed, while prosecuting his first action, Mahmood requested that the second action be consolidated with the first for discovery and trial.  See Letter from Ronald M. Daignault to the Court (Feb. 6, 2012) at 1, Ex. A, Mahmood I, 2012 WL 1801963 (requesting consolidation "[g]iven the common operative facts between this suit and the new suit" (emphasis added)).

Plaintiff's primary response to this argument is to note that "[e]ach patent at issue in this case has its own set of claims and is, 'by law,' directed to a separate invention."  (Pl. Mem. Law Opp'n Def.'s Mot. Dismiss 5, ECF No. 18 (quoting Kearns, 94 F.3d 1553, 1555 (Fed. Cir. 1996).)  That statement, of course, is true.  It is likewise true that, as a general matter, to sue on the infringement of one patent would not bar suit on the infringement of another patent.  Id. at 1555-56.  But Mahmood has not brought a patent infringement suit.  Nor has he brought a suit alleging only patent law causes of action.  Rather, he has brought suit on both state and federal claims that relate to patents.  On these facts, Federal Circuit precedent does not require this Court to find that cases involving separate patents necessarily involve separate transactions for res judicata purposes.

---

[4] It could also have focused on all related patents, given the allegations in the complaint.

In particular, Mahmood cites <u>Kearns</u>, which held that res judicata barred infringement claims on five patents that had been litigated in a prior action but not claims on sixteen patents that had not. <u>Kearns</u>, 94 F.3d at 1557. There, the Federal Circuit found that, in the context of patent infringement, "[e]ach patent raises an independent and distinct cause of action . . . , so an involuntary dismissal of a suit regarding one patent is not a ground for dismissal of a different suit on a different patent." <u>Id.</u> at 1555-56.

<u>Kearns</u> does not control here for several reasons. First, in both this action and in <u>Mahmood I</u>, plaintiff asserts claims that he concedes are broader than his patent claims. While his correction-of-inventorship claim (and, arguably, his conversion and unfair competition claims) may be patent specific, his claim for unjust enrichment goes beyond the '694 Patent. <u>See, e.g.</u>, Complaint at ¶ 148, pp. 26-27, <u>Mahmood I</u>, 2012 WL 1801963 (alleging unjust enrichment from, among other things the "commercial benefits and advantages attendant <u>or related to</u> the ownership or licensing of the '694 patent" (emphasis added)). Indeed, when discussing a similar (but not identical) unjust enrichment claim in his second action, plaintiff described the claim as encompassing RIM's entire "pre-2000" conduct. (<u>See</u> Hr'g Tr. 8:16-10:1). This broader claim should not be treated as narrowly for res judicata purposes as <u>Kearns</u> would treat claims that are necessarily limited in scope to a particular patent.

Second, and relatedly, because plaintiff's original complaint stated at least one claim under New York law that is broader than his patent-specific claims,

11

Second Circuit precedent — and not Federal Circuit precedent — controls the res judicata effect of this Court's judgment in Mahmood I. In the context of res judicata, the Federal Circuit only applies its own precedent, rather than that of the relevant regional circuit, when the case turns on "a rule of law having special application to patent cases." Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed. Cir. 2008). Here, the preclusive effect of Mahmood's state law claims, though based on the alleged misappropriation of an invention that was later patented, is not particular to patent law and does not depend on principles of patent law. Moreover, the scope of an earlier judgment's preclusive effect is measured by the complaint (as a whole) and not merely individual claims. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369-70 (2d Cir. 1997). The res judicata effect of Mahmood I thus can and should be analyzed under the precedent of the Second Circuit, consistently with any other Southern District of New York judgment adjudicating a complaint involving claims of unjust enrichment, unfair competition, or conversion. Cf. Pactiv Corp. v. Dow Chem. Co., 449 F.3d 1227, 1230 (Fed. Cir. 2006) (applying Second Circuit law to claim preclusion issue that did not depend on rule of law specific to patent cases).

Third, even if the state law claims in Mahmood I were not broader than the patent claims, and even if the law of the Federal Circuit (and not the Second Circuit) controlled, the Court is not convinced that the preclusive effect of a claim for patent infringement should be the same as a that of claim for correction of inventorship. Both the source of the cause of action and the scope of the property

12

right in an infringement claim are defined by the patent at issue. By contrast, the scope of the property right and the source of the cause of action in a correction-of-inventorship claim are tied to the invention itself, which may be broader than the claims in any particular patent. Though this distinction may be slight, it speaks directly to how the Court must define the transaction or series of transactions underlying the complaint.[5]

## II.   CONCLUSION

At oral argument on this motion, plaintiff likened defendant to a thief who stole his wallet, then used his credit card repeatedly, committing separate conversions with each swipe. (Hr'g Tr. 83:25-84:7.) Plaintiff argued that if he sued after defendant's first swipe, he should not be barred from suing again if defendant uses the credit card again. (Id.) He is, of course, correct. And so he would be, even if the pattern repeated itself one hundred times. The reason is that, under those circumstances, plaintiff would not have been able to bring suit for the subsequent conversions when he brought his original suit. Those conversions had not yet occurred.

But that is not this case here. In this matter, plaintiff did not sue until after defendant allegedly swiped plaintiff's card over and over again. He did not sue until after defendant improperly filed somewhere between six and thirty-two patents and

---

[5] Even if Kearns clearly applied here, the facts of that case were unique enough that any extension of its holding should be approached with caution. In Kearns, the Federal Circuit examined the preclusive effect of a judgment rendered against a pro se litigant who was denied leave to amend his complaint to include the patents at issue in the second action. Kearns, 94 F.3d at 1554. Moreover, the Federal Circuit explicitly noted that the judgment in the first action was not on the merits. Id.

patent applications.[6]  (See Compl. ¶¶ 2-7, ECF No. 1.)  Now plaintiff claims (though the Court disagrees) that the first suit was only for the first swipe.  Like his hypothetical victim, plaintiff believes he should be able to sue again and again: one suit per swipe.  (See Hr'g Tr. 81:25-82:15.)

Res judicata does not work that way.  To litigate two, six, or thirty-two separate suits about the same credit card, stolen from the same wallet, swiped in the same fashion — just because each swipe is a separate conversion — would be to permit an absurd waste of judicial resources and to remove any sense of finality from federal court judgments.  Res judicata exists to conserve judicial resources and to ensure the finality of judgments.

Plaintiff worries that barring this suit by res judicata gives defendant carte blanche to continue converting plaintiff's invention.  It does not.  If defendant commits a new act of conversion that occurs after plaintiff brought his original complaint, plaintiff would not be barred from bringing suit by res judicata.  But that is not what plaintiff alleges in this complaint.  Instead, plaintiff seeks a second bite at the apple.  He sues on claims that were available to him, in some cases, almost a decade before he brought his original action.  If res judicata is to have any meaning, it must mean that this action should be dismissed.

---

[6] The exact number depends on how you count.

14

For the foregoing reasons, plaintiff's claims in this matter are barred by res judicata and defendant's motion to dismiss is GRANTED.

The Clerk of the Court is directed to terminate this action.

SO ORDERED:


Dated:      New York, New York
            October 25, 2012

                                    KATHERINE B. FORREST
                                    United States District Judge

15